# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JERRY PITRE**                                              **CIVIL ACTION**

**VERSUS**                                                     **NO. 13-5327**

**YAMAHA MOTOR CO., LTD.,** *et al.*            **SECTION: "G"(1)**

## ORDER AND REASONS

This is a putative consumer class action in which Plaintiffs Jerry Pitre, Shaffer Domangue, David Swanner, and Sandy Use (collectively, "Plaintiffs") allege that Defendants Yamaha Motor Co., Ltd. ("YM") and Yamaha Motor Corp., USA's ("YMUSA") (collectively, "Yamaha") used a defective engine coating in outboard motors, causing corrosion and pitting in the exhaust systems of those motors.[1] Pending before the Court are Yamaha Motor Corporation USA's "Motion Dismiss Plaintiffs' Complaint"[2] and "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint."[3] Having reviewed the motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the court will deny as moot YMUSA's "Motion to Dismiss Plaintiffs' Complain,"[4] and regarding YMUSA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint," the Court will deny-in-part and grant-in-part the motion.

---

[1] Rec. Doc. 12 at pp. 1–3.

[2] Rec. Doc. 9.

[3] Rec. Doc. 15.

[4] Rec. Doc. 9.

## I. Background

### A. Factual Background

In their complaint, Plaintiffs allege that they purchased Yamaha's First Generation F-Series Four Stroke Outboard motors, model years 2000 through 2005 (the "F-Series Motors"), and that these motors had a defect in their aluminum exhaust component coatings ("coating defect") that caused "severe corrosion and pitting" in their exhaust systems.[5] The coating defect, according to Plaintiffs, caused a variety of problems, including "breaches in the exhaust passages" and "premature engine decline and failure," thus diminishing the useful life of the F-Series Motors.[6] An alternative coating, Plaintiffs maintain, would have "better protected" the affected components' "integrity."[7]

Plaintiffs assert that although the defect was "readily ascertainable" from Yamaha's engineering tests, it was not outwardly visible.[8] Thus, the corrosion resulting from the defect allegedly "went undetected" by consumers, allowing it to build up in the F-Series motors, causing the motors to fail.[9] Plaintiffs contend that because these problems occurred after the engine operated for 200-700 hours, "it is reasonable to conclude that the design of the exhaust system coating was defective and engineered improperly."[10]

---

[5] Rec. Doc. 12 at p. 2.

[6] *Id.*

[7] *Id.* at p. 7.

[8] *Id.* at p 2.

[9] *Id.*

[10] *Id.* at p. 7.

According to Plaintiffs, Yamaha provided a three-year warranty to "original and subsequent consumer-buyers who purchase[d] the F-Series Motors for 'pleasure use.'"[11] Plaintiffs maintain that, like many recreational boat users, they use their outboard motors less than 100 hours per year.[12] Since the corrosion, pitting, and engine failure "typically" occurred "only after 500-700 hours of usage," Plaintiffs assert that the defects "regularly" started causing damage only after pleasure users' three-year warranty expired, but "well before consumer expectations or industry standards would indicate [that] an outboard motor would typically need replacing or suffer complete major component failure."[13]

Plaintiffs contend that the coating defect was present when the motors left Yamaha's manufacturing facility, and that "reasonable engineering tests" would have revealed the defect's deleterious impact on the useful life of the F-Series motors' exhaust gas components.[14] They maintain, further, that Yamaha knew about the coating defect because it developed a "kit" intended to address problems arising from the defect; this "kit" allegedly cost consumers several hundred dollars to purchase, and thousands of dollars to implement.[15]

Plaintiffs allege that although Yamaha allegedly knew or should have known about the coating defect, it failed to warn consumers about the defect, continues to deny its existence, and has "systematically den[ied]" extensions of warranty coverage to those F-Series motors affected by the

---

[11] *Id.* at p. 6.

[12] *Id.* at p. 8.

[13] *Id.* at pp. 7–8.

[14] *Id.* at p. 8.

[15] *Id.*

defect, therefore depriving Plaintiffs and putative class members of adequate relief.[16] Yamaha's failure to warm consumers, Plaintiffs aver, caused Plaintiffs and putative class members to "purchase motors they otherwise would not have purchased," to "pay more for motors than they otherwise would have [done]," and "would likely affect a consumer's . . . repair decisions."[17] Additionally, Plaintiffs argue, the F-Series motors "could prove unsafe for consumer-boaters" if they fail at sea or in severe weather.[18]

Plaintiffs further allege that Yamaha "had exclusive knowledge" that their F-Series motors contained a hidden defect, and, since this defect "was material," and Yamaha has responded to complaints about the defect by "alluding to proper maintenance or routine flushing" rather than by initiating a recall procedure, Yamaha has "concealed from and failed to disclose" the defective nature of the F-Series motors.[19]

Plaintiffs contend that equitable tolling applies to their claims, as they "could not have discovered, through the exercise of reasonable diligence, that their F-Series motors were defective within the time period of any applicable statute of limitations," since: (1) the components affected by the coating defect were internal and concealed in the engine, making it impossible to detect the defect through a visual inspection; (2) Yamaha never provided—and, indeed, concealed—information about the defect.[20]

---

[16] *Id.*

[17] *Id.* at pp. 2; 9.

[18] *Id.* at p. 9.

[19] *Id.* at pp. 9–10.

[20] *Id.* at p. 17.

In their complaint, Plaintiffs make class allegations,[21] and also include facts specific to each plaintiff; the plaintiff–specific facts are as follows:

## 1.    Jerry Pitre

Jerry Pitre allegedly: (1) purchased an F-Series motor containing the coating defect on July 14, 2004; (2) followed the factory-recommended maintenance procedures for the motor; (3) began experiencing problems with the motor, including engine failure, in 2009, despite logging only 400 hours of use on the motor; (4) was unable to resolve the problems with the motor, and therefore had to purchase a new one; (5) spent money to replace the motor that he would not have had to spend if the motor had not been defective; and (6) would not have purchased the motor or paid the price he paid for it if he had known about the defect.[22]

## 2.    Shaffer Domangue

According to Plaintiffs, Shaffer Domangue: (1) purchased an F-Series motor containing the coating defect on July 1, 2004; (2) followed the motor's factory-recommended maintenance procedures; (3) began experiencing problems with the motor after using it for about 100 hours; (4) learned that the exhaust system had corroded after bringing it to a marine equipment dealer for repairs; (5) spent money to repair the motor; and (6) would not have purchased the engine or paid the price he paid for it if he had known about the defect.[23]

## 3.    David Swanner

---

[21] *Id.* at pp. 18–21.

[22] *Id.* at p. 14.

[23] *Id.* at pp. 13–14.

David Swanner purportedly: (1) purchased an F-Series motor containing the coating defect second-hand in December 2004, and had the warranty transferred to himself; (2) followed the motor's factory-recommended maintenance procedures; (3) began experiencing problems with the motor, including engine failure, in June 2013, after using the motor for around 300 hours; (4) spent money to repair the motor; and (5) would not have purchased the motor or paid the price he paid for it if he had known about the defect.[24]

### 4. Sandy Use

Sandy Use allegedly: (1) purchased an F-Series motor containing the coating defect in June 2006; (2) followed the motor's factory-recommended maintenance procedures; (3) brought the motor to the seller for repairs related to engine failure in April 2012, after using the motor for around 126 hours; (4) made a warranty claim, which Yamaha denied because "the motor was too old to be under warranty and had little use"; (5) subsequently spent money to have the motor repaired; (6) would not have purchased the motor or paid the price he paid for it if he had known about the defect.[25]

### B. Procedural Background

Plaintiffs, invoking this Court's federal question and diversity jurisdiction, filed a complaint against Yamaha in this Court on August 8, 2013.[26] YMUSA filed a "Motion to Dismiss Plaintiffs' Complaint" on October 9, 2013.[27] Plaintiffs filed an amended complaint on October 30, 2013.[28] In

---

[24] *Id.* at pp. 15–16.

[25] *Id.* at pp. 16–17.

[26] Rec. Doc. 1.

[27] Rec. Doc. 9.

[28] Rec. Doc. 12.

their amended complaint, Plaintiffs allege that Yamaha's conduct: (1) violates the Louisiana Products Liability Act;[29] (2) violates the warranty against redhibitory defects;[30] (3) constitutes negligence;[31] (4) violates the Louisiana Unfair Trade Practices and Consumer Protection Law;[32] (5) constitutes fraudulent concealment;[33] (6) violates the Magnuson-Moss Warranty Act;[34] (7) constitutes a breach of implied warranties;[35] and (8) constitutes unjust enrichment.[36] Plaintiffs' putative class is comprised of all persons within the United States who purchased one or more F-Series motors, other than for resale.[37] Plaintiffs seek: (1) certification of the class and Plaintiffs' designation as representatives of the class; (2) a common fund or mechanism to pay Plaintiffs and putative class members; (3) pre-judgment and post-judgment interest; (4) general and compensatory damages; (5) special damages; (6) equitable relief; (7) declaratory relief; (8) all other allowable relief; (9) litigation costs and expenses, including attorney's fees and expert fees; (10) other "just and proper" monetary, equitable, and declaratory relief.[38] While its first motion to dismiss[39] was still pending, YMUSA filed

---

[29]  *Id.* at pp. 21–22 (citing LA. REV. STAT. § 9:2800.51 *et seq.*).

[30]  *Id.* at pp. 22–23 (citing LA. CIV. CODE arts. 2520; 2545).

[31]  *Id.* at pp. 23–24.

[32]  *Id.* at p. 24.

[33]  *Id.* at pp. 24–25.

[34]  *Id.* at pp. 25–26 (citing 15 U.S.C. § 2301, *et seq.*).

[35]  *Id.* at pp. 27.

[36]  *Id.* at pp. 27–28. Plaintiffs demand a jury trial under FED. R. CIV. P. 38(b). *Id.* at p. 28.

[37]  *Id.* at pp. 18–19.

[38]  *Id.* at pp. 28–29.

[39]  Rec. Doc. 9.

a "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint" on November 27, 2013. On January 14, 2014, having obtained from the court an extension of time, Plaintiffs filed an opposition to YMUSA's November 27, 2013 motion to dismiss.[40] On January 23, 2014, with leave of court, YMUSA filed a reply in further support of its motion.[41] Plaintiffs, with leave of court, filed a sur-reply in opposition on January 31, 2013.[42]

## II. Parties' Arguments

### A. YMUSA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint."

#### 1. Louisiana Law

In its "Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint,"[43] YMUSA first contends that Plaintiffs' "allegations of negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, and unjust enrichment are all barred by the LPLA."[44] According to YMUSA, the LPLA provides the exclusive theories under which manufacturers can be held liable for damage caused by their products: redhibition for damage to products themselves, and the LPLA for damage flowing from the product.[45] In the present case, YMUSA alleges, the damages sought pertain to the engines themselves; therefore, the LPLA "channels" Plaintiffs into redhibition for

---

[40] Rec. Doc. 18.

[41] Rec. Doc. 21.

[42] Rec. Doc. 24.

[43] Although YMUSA's November 27, 2013 motion is titled "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint," its memorandum in support of that motion is titled "Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint." *See* Rec. Docs. 15; 15–1.

[44] Rec. Doc. 15–1 at p. 6.

[45] *Id.*

"any potential recovery,"[46] and forecloses Plaintiffs' claims under theories of negligence ("Count Three"), unfair trade practices ("Count Four"), fraudulent concealment ("Count Five"), breach of implied warranties ("Count Seven"), and unjust enrichment ("Count Eight").[47] In support of this argument, YMUSA points to a number of cases in which courts in the Eastern and Western Districts of Louisiana, applying the LPLA, have dismissed claims under these theories.[48] YMUSA also contends that because Plaintiffs have asserted a legal claim, they may not assert a claim for unjust enrichment.

YMUSA next contends that "Plaintiffs are not entitled to damages under the LPLA because . . . Plaintiffs only seek recovery for damages to the products themselves."[49] According to YMUSA, Plaintiffs only claim damage to the F-Series motors, loss of use, and reduction in value; these claims sound in redhibition, and "to the extent that damage is compensable in redhibition, it

---

[46] *Id.* at pp. 7–8.

[47] *Id.* at p. 10.

[48] *Id.* at pp. 8–9. According to YMUSA, the court in *Guillot v. Aventis Pasteur, Inc.* dismissed personal injury claims under theories of negligence, strict liability, breach of express warranty, and breach of implied warranty, and claims under the Louisiana Unfair Trade Practices and Consumer Protection Act ("LUTCPA") because the LPLA is the exclusive remedy for damages caused by a manufacturer's product, save for redhibition for pecuniary loss. *Id.* (quoting No. 02-3373, 2013 WL 4508003 at *14 (E.D. La. Aug. 22, 2013) (Lemmon, J.)). YMUSA further maintains that the court in *Bracey v. C.B. Fleet Holding Co.* dismissed a claim under LUTCPA because it was outside the scope of the LUTCPA. *Id.* at p. 9 (citing No. 06-3238, 2006 WL 37733808 at *1 (E.D. La. Dec. 15, 2006) (Africk, J.)). Additionally, YMUSA contends, the court in *Hilton v. Atlas Roofing Corp. of Miss.* granted the defendant's motion to dismiss the plaintiff's claims for breach of express and implied warranties, negligence, fraud, and unjust enrichment, and also concluded that the plaintiff could not maintain her action based on claims of putative class members. *Id.* at p. 9. (citing No. 05-4202, 2006 WL 1581239 at *1–*2 (E.D. La. May 18, 2006) (Africk, J.)). YMUSA also contends that the court in *Borskey v. Medtronics* dismissed the plaintiffs' fraud, fraudulent concealment, and deceptive advertising claims. *Id.* at pp. 9–10 (citing No. 94-2302, 1998 WL 122602 at *3 (E.D. La. Mar. 18, 1998) (Fallon, J.)). According to YMUSA, the court in *Truxillo v. Johnson & Johnson* dismissed the plaintiff's fraud claim. *Id.* at p. 9 (citing No. 07-2883, 2007 WL 1853363 at *1 (Barbier, J.)). Similarly, YMUSA alleges, the court in *Brennon v. Pfizer* dismissed the plaintiff's unjust enrichment claim. *Id.* at 10 (citing No. 09-1093, 2009 WL 2525180 (W.D. La. Aug. 17, 2009)).

[49] *Id.* at p. 11.

is not damage under the LPLA."[50] According to YMUSA, Pitre's redhibition claims are prescribed, because the one-year period of prescription against an alleged bad-faith seller begins to run when a buyer discovers a redhibitory defect, and Pitre discovered the defect in his motor in 2009.[51] YMUSA contends that Pitre cannot invoke equitable tolling in this case, because he "should have realized that he had a redhibition claim when the engine purportedly became inoperable due to failure below a consumer's reasonable expectations."[52]

## 2. Magnuson-Moss Warranty Act

YMUSA also contends that Plaintiffs have "no viable action" under the Magnuson-Moss Warranty Act[53] ("MMWA"), because although the MMWA provides a cause of action for consumers injured by a supplier's "failure to comply with a written or implied warranty obligation," YMUSA "properly limited" its warranty obligations, and Plaintiffs' motors "performed long beyond the warranty period before any problems allegedly arose."[54] YMUSA contends that their limitation was proper because: (1) the terms of the express warranty were "fully and conspicuously disclosed in simple and understandable language"; (2) "the limitation of implied warranties was set forth in clear and unmistakable language, which was prominently displayed on the face of the warranty"; and

---

[50] *Id.* at p. 11 (quoting *Safeco Ins. Co. of Am. v. Chrysler Corp.*, 01-1641 (La. App. 3 Cir. 2002), 834 So.2d 1026, 1046 and *TruSouth Oil, LLC v. Burlington Ins. Co.*, No. 11-493 c/w 11-1256, 2012 WL 4483645 at *5 (W.D. La. Sep. 28, 2012)).

[51] *Id.* at p. 12.

[52] *Id.* at pp. 12–13.

[53] 15 U.S.C. § 2301 *et seq*.

[54] Rec. Doc. 15–1 at pp. 12–13.

(3) "the limitation was not unconscionable," an issue which, according to YMUSA, "can be determined as a matter of law."[55]

YMUSA also argues that the court may take judicial notice of its warranty in deciding the present motion. According to YMUSA, Plaintiffs referred to the warranty multiple times in their complaint, thereby incorporating it by reference, even though they did not attach the warranty to their complaint.[56]

### 3. Class Allegations

Finally, YMUSA contends that "Plaintiffs' nationwide class action claims are defective as a matter of law," because "nationwide class actions are disfavored," and "the named plaintiffs lack standing to bring claims not cognizable under Louisiana Law."[57]

In support of the proposition that nationwide class actions are disfavored, YMUSA argues that courts have recognized that the challenges of applying the laws of many jurisdictions present "difficulties in class management" that "overwhelm any efficiencies that could be secured through classwide adjudication."[58] In support of the proposition that "material and relevant variations between the laws of the states . . . preclude nationwide treatment,"[59] YMUSA points to three elements of breach of warranty claims that vary between states. According to YMUSA, some states require a showing of reliance, while others do not; meanwhile, some states require privity, while

---

[55] *Id.* at pp. 14–15.

[56] *Id.* at p. 13.

[57] *Id.* at pp. 16–20.

[58] *Id.* at pp. 16–17 (quoting *In Re Vioxx Prod. Liab. Litig.,* 239 F.R.D. 450 (E.D. La. 2006) and citing, among other allegedly similar cases, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012)).

[59] *Id.* at p. 18.

others do not; finally, some states require that the plaintiff give notice to the manufacturer, while others require that the plaintiff give notice to the seller or retailer—or to no one at all.[60] These differences in law, coupled with each state's "interest in having its law applied to its resident claimants," have allegedly led district courts to strike nationwide fraud and warranty claims, and have also informed circuit courts' decisions to reverse class certification on warranty claims.[61] YMUSA maintains that these considerations make it "plain that Plaintiffs' warranty and fraud-based claims cannot be adjudicated on a class-wide basis."[62]

YMUSA further contends that since all of the named plaintiffs in this action are Louisiana residents and must therefore bring their claims under the LPLA, no named plaintiff can individually state claims of negligence, unfair trade practices, fraud, implied warranty, or unjust enrichment, and no named plaintiff can "create standing by pointing to claims that might be possessed by others, especially residents of other states.[63] Therefore, according to YMUSA, Plaintiffs' claims of negligence, fraudulent concealment, breach of implied warranty, and violation of the MMWA (as to non-Louisiana plaintiffs) must be dismissed.[64]

---

[60] *Id.* at pp. 18–19.

[61] *Id.* at pp. 19–20 (citing, among other cases, *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724–30 (5th Cir. 2007)).

[62] *Id.* at p. 20.

[63] *Id.*

[64] *Id.*

**B.      Plaintiffs' Opposition**

**1.      Magnuson-Moss Warranty Act**

In their memorandum in opposition to the pending motion, Plaintiffs first allege that their MMWA claims are "viable and not barred," because (1) "Yamaha's purported limitation of the duration of implied warranties violates the requirements of the [MMWA]"; (2) "Yamaha's purported limitation of the duration of limited warranties is unconscionable"; and (3) "the duration of implied warranties is the reasonable expected life of the outboard motors."[65]

Plaintiffs first contend that YMUSA's disclaimer limiting the duration of implied warranties is void because it appears on the second page of the limited warranty, contrary to the MMWA's requirement that the disclaimer appear on the "page in which the warranty text begins."[66] Second, Plaintiffs maintain that YMUSA's disclaimer of limited warranties is unconscionable, since: (1) Yamaha knew or should have known of the coating defect; (2) "purchasers were denied any meaningful" choice; and (3) "purchasers are left without an adequate remedy for Yamaha's breach of the implied warranty of merchantability."[67] Plaintiffs assert that its allegations, taken as true, "support a finding of unconscionability," and that unconscionability claims "should but rarely be determined on the bare-bones pleadings."[68]

---

[65]  *Id.* at pp. 2--6

[66]  *Id.* at p. 3.

[67]  *Id.* at pp. 3–4 (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287 (4th Cir. 1989), in support of the proposition that "[w]hen a manufacturer is aware that its product is inherently defective, but the buyer has no notice of [or] ability to detect the problem, there is perforce a substantial disparity in the parties' relative bargaining power. In such a case, the presumption is that the buyer's acceptance of limitations on his contractual remedies—including of course any warranty disclaimers—was neither "knowing" nor "voluntary," thereby rendering such limitations unsconscionable and ineffective.")

[68]  *Id.* at p. 4 (quoting *Carlson*, 883 F.2d at 292). Plaintiffs also argue that two cases cited by YMUSA in support of the proposition that its three-year durational limit for implied warranties was "conscionable"  are

Third, Plaintiffs contend that "without a proper limitation of the duration of implied warranties, the implied warranty of merchantability applies for the reasonable expected life of the product or goods," which, in the case of the outboard motors at issue here, should be "several thousands of hours of operation."[69]

### 2. Prescription

Plaintiffs next contend that Pitre's "redhibition claims have not prescribed," because Pitre sold his engine "without ever learning of the 'causal relationship between the tortious act and the damage,'"making "the determination of the time in which the prescriptive period began to run as to Pitre's claims . . . premature" and impossible to determine based on the pleadings.[70]

Plaintiffs also argue that their action is not prescribed because Pitre and his co-Plaintiffs have asserted a claim for breach of contract based on Yamaha's fraudulent concealment of the coating defect, which is: (1) allegedly actionable under LA. CIVIL CODE arts. 2524, 2529 and 1953; (2) is purportedly compatible with the LPLA's exclusivity provision; and (3) is subject to Louisiana's ten-year prescriptive period for personal actions.[71]

---

distinguishable from the present case, since these cases involved express warranties, rather than implied warranties (as here), and the plaintiffs in these cases did not allege that the defendant knew or should know of the alleged defect at the time of sale. *Id.* at pp. 4–5 (citing *Bush v. Am. Motors Sales Corp.*, 575 F. Supp. 1581, 1583 (D. Colo. 1984); *Broe v. Oneonta Sales Co.*, 100 Misc.2d 1099, 1102 (N.Y. S. Ct. 1978)).

[69] *Id.* at p. 5 (citing UCC § 2-302 and also citing *Carlson*, 883 F.3d at 287, in support of the proposition that "determining whether temporal warranty limitations are of 'reasonable duration' requires the court to determine nothing more than for how long, given past experience, consumers legitimately can expect to enjoy the use of a product 'worry-free.'").

[70] *Id.* at pp. 6–7.

[71] *Id.* at pp. 7–8.

### 3. Claims for Negligence, Unfair Trade Practices, Fraudulent Concealment, Breach of Implied Warranties, and Unjust Enrichment

Plaintiffs contend that their claims for negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, and unjust enrichment are "viable and not barred," because (1) YMUSA has mischaracterized the cases it cites on this point, and (2) the "exclusivity of the LPLA does not support the dismissal of Plaintiffs' claims" under these theories.[72]

### 4. Class Allegations

Plaintiffs also maintain that the "only appropriate inquiry regarding Article III standing [at the pleading stage] is whether the Named Plaintiffs have standing to bring suit on their own behalf."[73] Plaintiffs allege that they have established "standing through the claims they have asserted under Louisiana Law, and the standing of the putative class members is to be established during class certification."[74] Choice-of-law and the named plaintiffs' standing to bring claims on behalf of absent class members, according to Plaintiffs, "are not appropriately addressed prior to class certification" and not within the scope of a Rule 12(b)(6) motion. Moreover, Plaintiffs argue, Courts have broad discretion to manage class actions "through variety of methods rather than decertifying the class."[75]

Finally, Plaintiffs argue that their class allegations "should not be struck," because: (1) "federal courts disfavor motions to strike class allegations"; and (2) "federal appellate courts continue to certify consumer claim class actions."[76] According to Plaintiffs, YMUSA's motion to

---

[72] *Id.* at pp. 8–9.

[73] *Id.* at pp. 9–10.

[74] *Id.* at p. 11.

[75] *Id.*

[76] *Id.* at pp. 12–16.

dismiss their class allegations is "more properly characterized as a motion to strike rather than a motion to dismiss," and such a remedy is "drastic" and "very rarely appropriate" at the pleading stage.[77] Plaintiffs maintain that "a motion to strike class allegations must be denied unless it is 'beyond doubt that Plaintiffs cannot establish an actionable class action lawsuit.'"[78] In the present case, since "Plaintiff's well-pled class allegations of consumer fraud, breach of warranties, negligence, unfair trade practices, and unjust enrichment will have a substantial bearing on the subject matter of this litigation," and are "issues for class certification" that are "not relevant to a 12(b)(6) motion," the Court should deny YMUSA's request to strike the class allegations.[79] In support of the proposition that "federal appellate courts continue to certify consumer claim class actions," Plaintiffs cite several cases in which federal *and* state courts allegedly certified class actions involving the laws of multiple states.[80] Plaintiffs assert that YMUSA "fail[s] to acknowledge recent federal appellate decisions that have affirmed the certification of consumer claims on Federal Rule 23 . . . grounds," and that their "consumer fraud, breach of warranty, fraudulent concealment, negligence, unfair trade practices, unjust enrichment claims arise from a common course of conduct

---

[77] *Id.* at p. 12.

[78] *Id.* at p. 14 (quoting *Rios v. State Farm Fire & Cas. Co.*, 469 F.Supp.2d 727, 741–42 (S.D. Iowa, 2007)).

[79] *Id.* at p. 14.

[80] *Id.* at pp. 14–15. Among these, one—*Wolin v. Jaguar Land Rover North America, LLC*—is an actual federal appellate court opinion. *See* 617 F.3d 1168 (9th Cir. 2010).

by Yamaha," and are "properly alleged.."[81] Accordingly, Plaintiffs argue, their class allegations "should not be struck."[82]

## C. YMUSA's Reply

In its reply memorandum in further support of its motion, YMUSA contends that the LPLA bars Plaintiffs' allegations of negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, and unjust enrichment, depriving Plaintiffs of standing to allege claims under these theories on behalf of putative class members from outside Louisiana.[83]

### 1. Prescription

YMUSA contends that Pitre's redhibition claim is prescribed because the prescriptive period began to run as to Pitre in 2009, when Pitre's motor allegedly failed, making his redhibition claim now facially prescribed.[84] According to YMUSA, it is appropriate to dismiss Pitre's redhibition claim based on the pleadings alone, since Pitre's allegations show that he "did nothing of particularity or consequence" to investigate the motor's problem until he bought a new motor.[85] YMUSA further asserts that Pitre cannot "elongate the prescriptive period by 10 years" by arguing that "in reality he has alleged a breach of contract action," since Pitre has not alleged—as is purportedly required in breach of contract actions—that he was in privity of contract with Yamaha.[86]

---

[81] *Id.* at p. 16.

[82] *Id.*

[83] Rec. Doc. 21 at pp. 1–2.

[84] *Id.* at pp. 2–3.

[85] *Id.* at p. 3

[86] *Id.* pp. 3–4.

## 2. Magnuson-Moss Warranty Act

According to YMUSA, its warranty was "consciable and proper, and therefore Plaintiffs have no viable action under the Magnuson-Moss Federal Warranty Act."[87] YMUSA asserts that "where an express limited warranty is given," the MMWA permits implied warranties to be "limited to the duration of the written warranty of reasonable duration."[88]  On this point, YMUSA first contends that its disclaimer limiting the implied warranty appeared—as is allegedly required—on the page where the warranty text begins, and includes an alleged scanned image of the first page of the warranty to support this assertion.[89] Next, YMUSA asserts that even if a manufacturer has knowledge of an alleged defect at the time of a product's sale, its knowledge alone does not make a limited warranty unconscionable.[90] In the present case, YMUSA alleges, Plaintiffs "have not established unconscionability because they make no allegations other than the alleged defect occurred outside of the limited warranty period."[91]

---

[87] *Id.* at p. 4.

[88] *Id.* (citing, among other cases, *Bush v. Am. Motors Sales Corp.*, 575 F. Supp. 1581, 1583 (D. Colo. 1984).

[89] *Id.* at p. 5.

[90] *Id.* at pp. 5–6. In support of this assertion, YMUSA cites  several district court cases from outside the Fifth Circuit, including *McCabe v. Daimler AG*, 948 F. Supp.2d 1347, 1539 (N.D. Ga. 2013) (allegedly concluding that "Plaintiffs still have failed to show that a manufacturer's knowledge that a part is defective at the time of sale is sufficient by itself to render time and mileage limitations unconscionable[]"); and *McQueen v. BMW of N. Am. LLC*, No. 12-6674, 2013 WL 4607353 (D.N.J. Aug. 29, 2013) (purportedly concluding that "a defendant's knowledge alone about a latent defect could have no impact on the consciability of a limited warranty under Magnuson-Moss[]").

[91] *Id.* at pp. 6–7.

### 3. Class Claims

Finally, YMUSA contends that "Plaintiffs' [sic] fail to provide a reasonable basis for their nationwide class action claims," as they: (1) "make absolutely no attempt to address the variations in state laws that complicate nationwide class actions of this kind"; (2) "completely ignore the rulings from the Fifth Circuit" and from this Court that "elucidate the problems with certifying nationwide classes"; (3) "merely argue that the class allegations should not be struck unless it is clear that Plaintiffs cannot establish an actionable class action lawsuit."[92] YMUSA asserts that this Court and others "continually deny the certification of nationwide class actions," and that this Court "may address," and "should dismiss" Plaintiffs' class allegations at the pleading stage, "just as other courts have done."[93] YMUSA further argues that Plaintiffs "cannot fashion standing by alleging claims that others could possess," and that "nothing about the development of this lawsuit will change the simple fact that these named plaintiffs are Louisiana residents, who lack any claims outside the LPLA," and therefore "lack standing to bring claims on behalf of non-Louisiana plaintiffs" who might have standing to bring claims for negligence, fraudulent concealment, breach of implied warranty, violation of the MMWA ("for non-Louisiana plaintiffs") and unjust enrichment.[94] Therefore, YMUSA argues, Plaintiffs' class claims should be dismissed.

---

[92] *Id.* at pp. 7–8 (citing *Cole v. Gen. Motors Corp.*, 484 F.3d 717-30 (5th Cir. 2007) and *In re Vioxx Prod. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006)).

[93] *Id.* at pp. 7–8.

[94] *Id.* at pp. 8–9.

**D.     Plaintiffs' Sur-Reply**

In their sur-reply in opposition to YMUSA's motion, Plaintiffs first assert that the "limitation of the limited warranties" appears on page two of the warranty, in violation of federal regulations.[95] Second, Plaintiffs contend that their complaint makes several allegations of unconscionability, including: (1) that Yamaha "created high consumer expectations through their marketing for the F-Series motors"; (2) that the coating defect would not manifest until "a year or two after the warranty expired;" (3) Yamaha "remained silent or deflected concerns" about the coating defect; (4) consumers "reasonably expect, and industry standards indicate, that outboard engines created by a major manufacturer with defendants' reputation and touted durability should undergo several thousand hours of usage before failing or requiring major repairs and/or replacement"; (5) because Plaintiffs and the putative class members "use their outboard engines less than 100 hours per year, a three-year warranty limitation would and has not covered many F-Series motors having the coating defect," since "signs of the defect would not manifest . . . through failing or major repair or replacement until a year or two after the warranty expired or later . . ."[96] According to Plaintiffs, these allegations "point to the uneven bargaining power between Plaintiffs and Defendant," and support a finding of unconscionability, just like similar allegations have done in other cases.[97]

Third, Plaintiffs contend that Pitre's redhibition claim has not prescribed, since Yamaha's "fraudulent concealment" of the coating defect "prevents the running of the prescriptive period."[98]

---

[95]  Rec. Doc. 24 at pp. 1–2.

[96]  *Id.* at pp. 2–3.

[97]  *Id.* at p. 3.

[98]  *Id.* at p. 4.

Plaintiffs request an opportunity to amend their complaint if the Court determines that Pitre has pled his claim insufficiently.[99] Finally, Plaintiffs contend that YMUSA has prematurely requested that the Court dismiss its class allegations, and assert that they have provided the Court with "many examples of viable nationwide consumer class actions." According to Plaintiffs, "Defendant's announcement of the death of the nationwide class action is greatly exaggerated."[100]

### III. Law and Analysis

**A.    Standard on a Motion to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[101] A claim "has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[102] A complaint need not contain "detailed factual allegations," but rather "must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[103] In resolving a motion to dismiss, this Court "draw[s] all

---

[99]  *Id.*

[100]  *Id.* at pp. 4–5.

[101]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[102]  *Id.* (citing *Twombly*, 550 U.S. at 556).

[103]  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citations omitted).

reasonable inferences in the Plaintiff[s'] favor."[104] Motions to dismiss under Federal Rule of Civil

Procedure 12(b)(6) are "viewed with disfavor and [are] . . . rarely granted."[105]

Where a party alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that

those allegations "state with particularity the circumstances constituting fraud or mistake."[106] This

Court applies Rule 9(b) to fraud claims "with 'bite' and 'without apology.'"[107] Such claims must

contain "simple, concise, and direct" allegations of the "circumstances constituting fraud," which

"must make relief plausible, not merely conceivable, when taken as true."[108]

**B.      Named Plaintiffs' Claims**

**1.       The Louisiana Products Liability Act**

YMUSA contends that the LPLA forecloses Plaintiffs from stating causes of action under

theories of negligence, unfair trade practices, fraudulent concealment, breach of implied warranties,

and unjust enrichment, and indeed "channels" all of Plaintiffs' claims into redhibition, since

Plaintiffs only "claim damage to the F-Series motors, loss of use, and reduction in value." The

LPLA, as codified at LA. REV. STAT. § 9:2800.52, provides that:

> This Chapter establishes the exclusive theories of liability for manufacturers for
> damage caused by their products.  A claimant may not recover from a manufacturer

---

[104]  *Id.*

[105]  *Id.*

[106]   *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

[107]   *Id.*

[108]   *Id.* at 186.

for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.[109]

To state a cause of action under the LPLA, it appears that a plaintiff must allege:

> (1) [T]hat the product possesses an "unreasonably dangerous" characteristic;
>
> (2) [T]hat this unreasonab[y] dangerous characteristic proximately caused the plaintiff's damage; and
>
> (3) [T]hat injury arose from a "reasonably anticipated use" of the product.[110]

Under Section 9:2800.54 of the LPLA:

> (B) A  product is unreasonably dangerous if and only if:
>
> (1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.56;
>
> (2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
>
> (3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
>
> (4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.[111]

Plaintiffs, in Count One of their complaint, allege that the LPLA entitles them to recover all damages "caused by the unreasonable characteristics of the product [Yamaha] . . .  manufactured and distributed," and further claim that the F-Series motors are unreasonably dangerous:  (1) in

---

[109]  LA. REV. STAT. § 9:2800.52. *See also Aucoin v. Amneal Pharmaceuticals, LLC*, No. 11-1275, 2012 WL 2990697 at *11 (E.D. La. Jul. 20, 2012) (Brown, J.) (applying the LPLA and dismissing all claims not brought under the LPLA as "in contravention of the LPLA's exclusive remedy provision.").

[110]  12 LA. CIV. L. TREATISE, TORT LAW § 16:32 (2d. Ed. 2013) (citing LA. REV. STAT. § 9:2800.54).

[111]  LA. REV. STAT. § 9:2800.52. *See also Grenier v. Med. Eng. Corp.*, 243 F.3d 200, 203 (5th Cir. 2001) (listing the four theories of recovery).

"construction and composition," (2) in design, and (3) because of inadequate warning. As a result of the alleged defect, Plaintiffs claim that Yamaha:

> a. Caused Plaintiffs and the Class Members to pay premium prices for a defective product or to pay for a product that they would have purchased had they been warned or advised about the defect.

> b. Reduced the value of the F-Series motors purchased by Plaintiffs and Class Members; and

> c. Caused reasonable consumers like Plaintiffs and Class Members to spend money for attempted repairs, replacements, and other purported remedies of the Coating Defect in their F-Series motors that they would not have incurred but for Defendants' common wrongful course of conduct.[112]

The LPLA defines damages compensable under the statute as:

> [A]ll damage caused by a product, including survival and wrongful death damages, for which Civil Code Articles 2315, 2315.1 and 2315.2 allow recovery. "Damage" includes damage to the product itself and economic loss arising from a deficiency in or loss of use of the product only to the extent that Chapter 9 of Title VII of Book III of the Civil Code, entitled "Redhibition," does not allow recovery for such damage or economic loss. Attorneys' fees are not recoverable under this Chapter.[113]

Under LA. CIV. CODE art. 2520, which is within Chapter 9 of Title VII of Book III of the Civil Code,

> The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.

> A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

> A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.

---

[112] Rec. Doc. 12 at p. 13.

[113] LA. REV. STAT. § 9:2800.53.

Further, under LA. CIV. CODE art. 2545, which is also in Chapter 9 of title VII of Book III of the Civil

code:

> A seller who knows that the thing he sells has a defect but omits to declare it, or a
> seller who declares that the thing has a quality that he knows it does not have, is
> liable to the buyer for the return of the price with interest from the time it was paid,
> for the reimbursement of the reasonable expenses occasioned by the sale and those
> incurred for the preservation of the thing, and also for damages and reasonable
> attorney fees. If the use made of the thing, or the fruits it might have yielded, were
> of some value to the buyer, such a seller may be allowed credit for such use or fruits.
>
> A seller is deemed to know that the thing he sells has a redhibitory defect when he
> is a manufacturer of that thing.

Courts applying the LPLA have concluded that "to the extent that . . . damage is compensable in

redhibition, it is not compensable under the [LPLA]."[114] Courts have also concluded that "generally,

economic loss claims by buyers fall under redhibition, and personal injury claims fall under the

LPLA."[115]

---

[114] *Safeco Ins. Co. of Am. v. Chrysler Corp.*, 2001-1641 (La. App. 3 Cir. 7/31/02) 834 So.2d 1026, 1046.
*See also*

[115] *TruSouth Oil Co., LLC v. Burlington Ins. Co.*, 2012 WL 4483465 *5 (W.D. La. Sep. 28, 2012). *See
also In re Ford Motor Co. Vehicle Paint Litig.*, 1996 WL 426548 (E.D. La. Jul. 30, 1996) (Vance, J.) ("The
LPLA . . .permits a claimant to seek recovery under warranty principles found in Louisiana's redhibition laws for
'damage to the product itself and economic loss arising from deficiency in or loss of use of the product.' When those
damages are not recoverable in redhibition, they may be sought against the product's manufacturer under the LPLA.
However, the LPLA contains the exclusive tort theories of recovery against a manufacturer for damage caused by its
product."). One Louisiana treatise has stated that:

> A claimant may have against the manufacturer both an action for injury under the LPLA and an
> action in redhibition for damage to the product itself and for economic loss including attorney's
> fees related to the damage to the product and the economic loss. The purchaser of a truck with
> defective brakes that causes the purchaser-owner to have an accident and suffer injuries has a claim
> for personal injury against the manufacturer under the LPLA; and if the truck were damaged or
> destroyed and if economic loss, such as a loss of hauling contracts, were suffered, those losses
> would lie in redhibition and include attorneys fees.

WILLIAM E. CRAWFORD, 12 LOUISIANA CIVIL LAW TREATISE § 16:11 (2d ed. 2013

In their briefing related to the present motion, Plaintiffs do not address whether they have stated claims that exceed the scope of a redhibition theory. In their complaint, Plaintiffs allege that: (1) they had to "pay premium prices," to buy a "a product that they would not have purchased" if they had known of the defect; (2) the defect "reduced the value" of the motors; and (3) the defect "[c]aused reasonable consumers . . . to spend money[.]" These claimed damages are economic in nature, and thus fall squarely within the scope of LA. CIV. CODE arts. 2520 and 2545. Apart from making the bare assertion that the F-Series motors were "unreasonably dangerous" in several ways, Plaintiffs allege no facts suggesting that the F-Series motors or the coating defect caused any non-economic damages. Therefore, Plaintiffs have stated a claim in redhibition, but not under any of the four "unreasonably dangerous" theories set forth in the LPLA.

### a. Negligence, Unfair Trade Practices, Fraudulent Concealment, and Unjust Enrichment

Plaintiffs also claim negligence ("Count Three"), unfair trade practices ("Count Four"), fraudulent concealment ("Count Five"), breach of implied warranties ("Count Seven"), and unjust enrichment ("Count Eight").[116] A plain-language reading of LA. REV. STAT. §§ 9:2800.52–53 makes clear that the LPLA, and, by reference, Chapter 9 of Title VII of Book III of the Civil Code, provide the exclusive theories of recovery for defective products. The LPLA does not provide causes of action for negligence, fraudulent concealment, or unjust enrichment. Thus, Plaintiffs may not individually maintain actions under Louisiana law based on any of these theories. Moreover, to the

---

[116] *Id.* at p. 10.

extent that Plaintiffs allege that Yamaha knew that the F-Series motor was defective, but sold it anyway,[117] their claims sound in redhibition.[118]

The LUTPA[119] governs Plaintiffs' unfair trade practices claims. Under the LUTPA:

Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.[120]

Private individuals may bring an action to enforce the statute, as provided in Section 51:1409(A):

Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. If the court finds the unfair or deceptive method, act, or practice was knowingly used, after being put on notice by the attorney general, the court shall award three times the actual damages sustained. In the event that damages are awarded under this Section, the court shall award to the person bringing such action reasonable attorney fees and costs. Upon a finding by the court that an action under this Section was groundless and brought in bad faith or for purposes of harassment, the court may award to the defendant reasonable attorney fees and costs.

The Louisiana Supreme Court does not appear to have addressed whether a plaintiff may bring claims under both the LPLA and the LUTPA. However, federal courts applying Louisiana law have

---

[117] Under the heading of "fraudulent concealment," Plaintiffs allege, among other things, that Yamaha "knew or should have known" that its F-Series motors were "defective and poorly designed and-or manufactured," "knew or should have known" that the coating defect "would cause corrosion of the exhaust system." Rec. Doc. 12 at pp. 24–25. In their "breach of implied warranties" count, Plaintiffs allege that Yamaha "implicitly warranted that the product was safe, efficacious, well tested, and of high quality," but in fact "manufacur[ed], s[old], and/or install[ed] a defective, unsafe, and poorly manufactured product." *Id.* at p. 27. Addressing Yamaha's alleged "unjust enrichment," Plaintiffs claim, among other things, that Yamaha "knew or should have known of the damages that their defective F-Series Motors would cause[.]" *Id.* at p. 28.

[118] *See* LA. CIV. CODE art. 2545 (""A seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have . . .").

[119] LA. REV. STAT. § 51:1401 *et seq.*

[120] LA. REV. STAT. § 51:1405(A).

concluded that the LPLA bars plaintiffs from maintaining an action under the LUTPA.[121] In *Bladen v. C.B. Fleet Holding Co., Inc.*, a district court in the Western District of Louisiana conducted a persuasive analysis of whether the LPLA precluded actions under the LUTPA, and concluded that "[t]he [Louisiana] legislature, with full knowledge of the LUTPA, unquestionably enacted the LPLA statutory declaration of exclusive liability . . . and made no exception for the LUTPA," despite making an express exception for actions "in redhibition."[122] The *Bladen* court also noted that "the state jurisprudence contains no exception for the LUTPA."[123]

Under *Erie*, this Court, applying Louisiana law, first considers whether Louisiana's "codes[] and statutes" resolve the question at hand; next, it considers whether the Louisiana Supreme Court has addressed the issue.[124] Setting forth a guiding principle of statutory interpretation, the Louisiana Supreme Court has stated that courts presume that "the legislative branch intends to achieve a consistent body of law."[125] Since the LPLA specifically excludes from the scope of its exclusivity provision certain actions arising under Chapter 9 of Title VII of Book III of the Civil Code (including actions alleging product defects, as here), but makes no such provision for LUTPA actions, the Court concludes, as the *Bladen* court did, that the Louisiana legislature did not intend to preserve the

---

[121] *See Bracey v. C.B. Fleet Holding Co., Inc.*, No. 06-3228, 2006 WL 2733808 at *2 (E.D. La. Dec. 15, 2006) (Africk, J.) ("Plaintiffs argue that, because the LUTP-CPA offers remedies distinct from those available via the LPLA, they should be allowed to pursue their LUTP-CPA claims despite the exclusivity of the LPLA. Plaintiffs, however, provide the Court will no useful authority for their arguments, and . . . the exclusivity of the LPLA is well-established in both the statute and its attendant case law."); *Bladen v. C.B. Fleet Holding Co., Inc.*, 487 F. Supp.2d 759, 766–67 (W.D. La. 2007).

[122] 487 F.Supp.2d at 767 (citing *State v. Campbell*, 2003-3035 (La. 7/6/04), 877 So.2d 112, 117).

[123] *Id.* at 771.

[124] *Wiltz v. Bayer CropScience, Ltd., Partnership*, 645 F.3d 690, 695 (5th Cir. 2011).

[125] *State v. Campbell*, 2003-3035 (La. 7/6/05) 877 So.2d 112, 117.

LUTPA as a theory of recovery in product defect actions, at least to the extent that these actions are independently cognizable under the LPLA or Chapter 9 of Title VII of Book III of the Civil Code. The Louisiana Supreme Court has not addressed this issue. If it did so, this Court believes that it would reach the same conclusion stated here.

In the present case, Plaintiffs' LUTPA allegations—that "[d]efendants' acts and omissions as well as their failure to use reasonable care in the manner alleged in this Complaint equals unfair and deceptive methods," therefore violating the LUTPA[126]—only restate their redhibition and negligence allegations, save for their reference to the LUTPA. The Court, persuaded by the *Bladen* court's analysis of the LPLA and LUTPA, concludes that, upon the facts alleged in the present case, Plaintiffs have provided the Court with no basis to distinguish its LPLA claims from its LUTPA claims. Accordingly, in light of the LPLA's exclusivity provision, Plaintiffs' LUTPA claims are barred.

### b. Contractual Claims

The parties dispute whether the LPLA permits Plaintiffs to state claims for breach of contract due to fraudulent concealment. In support of their argument that they may bring an action for fraudulent concealment under the LPLA, Plaintiffs cite LA. CIV. CODE arts. 2524, 2529, 2545, and 1953, as well as *C-Innovation v. Norddeutsche Seekabelewereke, GMBH* and *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*[127] LA. CIV. CODE art. 2545 provides that:

The thing sold must be reasonably fit for its ordinary use.

---

[126] Rec. Doc. 12 at p. 24.

[127] No. 10-441, 2013 WL 990026 (E.D. La. Mar. 13, 2006) (Morgan, J.) and No. 09-750, 2010 WL 892869 (W.D. La. Mar. 11, 2010), respectively.

When the seller has reason to know the particular use the buyer intends for the thing, or the buyer's particular purpose for buying the thing, and that the buyer is relying on the seller's skill or judgment in selecting it, the thing sold must be fit for the buyer's intended use or for his particular purpose.

If the thing is not so fit, the buyer's rights are governed by the general rules of conventional obligations.

LA. CIV. CODE art. 2529 states:

When the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations.

LA CIV CODE art. 2545 is quoted above; Comment (a) of that code provision states that:

This Article gives formulation to a well-established jurisprudential interpretation of the source provision, Article 2545 of the Louisiana Civil Code of 1870. It changes the law in part by allowing a buyer to bring an action in redhibition also against a seller who, knowingly, made a false declaration regarding a quality of the thing. This provision does not preclude an action for fraud against such a seller whenever the requirements of Article 1953 are met.

Finally, LA. CIV. CODE art. 1953 provides that:

Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction.

In *C-Innovation*, cited by Plaintiffs, a district court in the Eastern District of Louisiana concluded that the LPLA did not foreclose buyers from maintaining a fraud action against a seller, because: (1) the LPLA preserved "all causes of action arising under Chapter 9 of Title VII of Book III of the Louisiana Civil Code . . . to the extent that the claimant seeks to recover the value of the product at issue or other economic loss"; and (2) Chapter 9 of Title VII of Book III of the Louisiana Civil Code provides for "actions for breach of contract because the thing delivered is not of the kind or quality specified in the contract [and] . . . allow[s] a buyer to bring an action against a seller who knowingly made a false declaration regarding the quality of a thing either in redhibition or 'for fraud against

30

such a seller whenever the requirements of article 1953 are met.'"[128] In *Hollybrook*, also cited by Plaintiffs, a district court in the Western District of Louisiana stated that "while the exclusivity provision leaves no doubt breach of contract claims against manufacturers for damages caused by their products are subsumed by the LPLA," plaintiffs may bring breach of contract actions "where a buyer sues a manufacturer for economic damages not covered in redhibition and not caused by the product itself."[129]

YMUSA contends that the present case is distinguishable from *C-Innovation* because the plaintiff in that case was in privity of contract with the seller, whereas Plaintiffs here have sued the "alleged non-seller manufacturer," despite their lack of privity with the manufacturer.[130]

In *C-Innovation*, the court addressed privity, stating that:

> [U]nlike a breach of contract based fraud claim brought under article 1953, which requires privity between the plaintiff and the defendant, a redhibition claim does not require privity between the plaintiff and the manufacturer, because the manufacturer is liable for defects "resulting from the original manufacture" of the product.[131]

Under LA. CIV. CODE art. 1906,

> A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished.

---

[128] 2013 WL 990026 at *4.

[129] 2010 WL 892869 at *7.

[130] Rec. Doc. 21 at p. 4. By that same reasoning, *Hollybrook* is also distinguishable from present case, since *Hollybrook* was an action between a buyer and a seller. *See* 2010 WL 892869 at *1.

[131] 2013 WL 990026 at *7 n. 27 (citing *Aucoin v. S. Quality Homes, LLC*, 07-1014 (La. 2/26/08), 984 So.2d 685, 692–93). In *Aucoin*, the Louisiana Supreme Court noted that:

> Although the code articles on redhibition appear to only allow a suit by a buyer against a "seller" for redhibitory defects, this Court held in *Media Production Consultants, Inc. v. Mercedes–Benz of North America, Inc.*, 262 So.2d 377 (La. 1972), that the buyer could recover directly from the manufacturer for breach of warranty, despite the fact that there was no privity of contract between them.

The Louisiana Supreme Court has held that an alleged breach of warranty, absent privity of contract, is insufficient to establish a contractual action against a defendant.[132] The warranty submitted by YMUSA along with its motion to dismiss, could contemplate mutual action leading to the formation of a relationship between Plaintiffs and Yamaha. It states that:

> To be eligible for warranty coverage, the outboard motor must be registered with Yamaha Motor Corporation, U.S.A. Warranty registration can be accomplished by any authorized Yamaha Outboard Motor Dealer. Upon receipt of the registration, and Owner's Warranty Card will be sent by Yamaha to the registered purchaser.[133]

Plaintiffs, however, do not allege that they formed any type of contractual agreement with Yamaha. where a party alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that those allegations "state with particularity the circumstances constituting fraud or mistake."[134] This Court applies Rule 9(b) to fraud claims "with 'bite' and 'without apology.'"[135] Such claims must contain "simple, concise, and direct" allegations of the "circumstances constituting fraud," which "must make relief plausible, not merely conceivable, when taken as true."[136] Applying this standard,

---

[132] *Cartwright v. Chrysler Corp.*, 255 La. 597, 602 ("There existing no privity of contract between the plaintiff and defendants in this suit, the mere allegations of breach of warranty is not enough to change the character of the action into one arising out of contract and bring it within the ten year prescriptive period.").

[133] Rec. Doc. 15–2 at p. 1. YMUSA attaches the alleged warranty and contends that the Court may take judicial notice of it because Plaintiffs refer to it "on multiple occasions in their Complaint," thereby "incorporating it by reference." "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). Plaintiffs refer to the warranty in their pleadings. *See, e.g.* Rec. Doc. 12 at pp. 25–27. The Court will therefore consider the warranty as part of the pleadings.

[134] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

[135] *Id.*

[136] *Id.* at 186.

the fact that Plaintiffs have not alleged that Yamaha formed an agreement with them in the first place precludes them from alleging that any such agreement, if it existed, was fraudulently induced.

### 2.    Prescription

YMUSA contends that Pitre's claims are prescribed, since more than one year has elapsed since Pitre discovered his engine's alleged defect in 2009. Plaintiffs, on the other hand, maintain that Pitre's claims are not prescribed, because the prescriptive period applicable in redhibition actions begins to run when the buyer learns of "the causal relationship between the tortious act and the damage."[137] In their complaint, Plaintiffs allege that equitable tolling applies to the present case because they "could not have discovered, through the exercise of reasonable diligence, that their F-Series motors were defective within the time period of any applicable statute of limitations[.]"[138]

The United States Court of Appeals for the Fifth Circuit has held that "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like."[139] LA CIV. CODE art. 2534 sets forth the applicable prescriptive period for redhibition actions. It provides:

> A. (1) The action for redhibition against a seller who did not know of the existence of a defect in the thing sold prescribes in four years from the day delivery of such thing was made to the buyer or one year from the day the defect was discovered by the buyer, whichever occurs first.
>
> (2) However, when the defect is of residential or commercial immovable property, an action for redhibition against a seller who did not know of the existence of the

---

[137]  Rec. Doc. 18 at p. 17.

[138]  Rec. Doc. 12 at pp. 17–18.

[139]  *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003).

defect prescribes in one year from the day delivery of the property was made to the buyer.

B. The action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer.

C. In any case prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.

In support of the proposition that prescription begins to run when a buyer learns of the causal relationship between a tortious act and the damage it caused, Pitre cites *Beth Israel v. Bartley, Inc.*,[140] a Louisiana Fourth Circuit Court of Appeal decision addressing the doctrine of *contra non valentem*.

In *Beth Israel*, the court reasoned that:

Prescription does not commence to run until the plaintiff has actual or constructive knowledge of the tortious act, the damage caused, and the causal relationship between the tortious act and the damage. A person cannot bring suit until his cause of action has accrued and therefore prescription cannot run until that time. Mere apprehension that something might be wrong is not sufficient.

In *Cartwright v. Chrysler Corp.*, which the *Beth Israel* court cited, the Louisiana Supreme Court, stated that in order for prescription to run:

[I]t is not necessary that the party have actual knowledge of the conditions as long as there is 'constructive notice.' Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.[141]

Where prescription presents questions of fact—such as "reasonableness," as here—that are not susceptible to resolution on the face of the pleadings, the United States Court of Appeals for the Fifth

---

[140] 579 So.2d 1066, 1070–71 (La. App. 4 Cir. 1991).

[141] 232 So.2d 285, 287 (La. 1970).

Circuit's decision in *Jamil Abdu-Alim Amin v. Universal Life Ins. Co.* instructs that dismissal under Federal Rule of Civil Procedure 12(b)(6) is improper.[142]

Yamaha alleges that Pitre discovered the alleged redhibitory defect when he brought the motor back to the seller and purchased a new motor, and that he "evidently conducted no analysis of the cause of his engine trouble."[143] Yamaha also contends that Pitre's "neglect of lack of reasonable diligence does not prevent the running of prescription, even if plaintiff did not comprehend the causal relationship between the tortious act and the damage."[144] As in *Jamil Abdu-Alim Amin*, Yamaha's arguments on this point address factual issues—such as whether Pitre exercised reasonable diligence in connecting the failure of his F-Series motor to the coating that allegedly caused it—that are not readily ascertainable from the pleadings. Plaintiffs have alleged that "the internal corrosion went undetected by consumers because it was not outwardly visible."[145] Each named plaintiff, including Pitre, allegedly brought their motor in for repairs after the motors began to malfunction.[146] Since the Court, in resolving this motion, resolves all factual disputes in the Plaintiffs' favor, it will not dismiss Plaintiffs' claims on the basis of prescription.

---

[142] 706 F.2d 638, 641 (5th Cir. 1983) (reversing the district court's order dismissing a plaintiff's complaint where the question of whether the action had prescribed depended on a determination of whether a "reasonable" period of time for performance of a contract had elapsed, and noting that "[a] court should be extremely reluctant to grant a motion to dismiss on a ground that requires a determination of . . . facts that are not normally ascertainable from the pleadings.").

[143] Rec. Doc. 21 at p. 3.

[144] *Id.*

[145] Rec. Doc. 12 at p .2.

[146] Rec. Doc. 12 at pp. 13–17.

### 3. The Magnuson-Moss Warranty Act

YMUSA also alleges that the Court should dismiss Plaintiffs' claims under the MMWA, because it "properly limited" its warranty to three years.[147] Plaintiffs, in turn, contend that the purported limitation violates the requirements of the MMWA and is unconscionable, and that the duration of implied warranties under the MMWA therefore is the "reasonable expected life of the outboard motors."[148]

The MMWA, as codified at 15 U.S.C. § 2302(a), provides that warrantors "shall, to the extent required by rules of the Commission, fully and conspicuously disclose in simple and readily understood language the terms and conditions" of their warranties. At 15 U.S.C. § 2303(a)(2), the MMWA states that: "if the written warranty does not meet the Federal minimum standards for warranty set forth in section 2304 of this title, then it shall be conspicuously designated a "limited warranty." The warranty in the present case is allegedly a "limited" warranty.[149] Under 15 U.S.C. § 2304, "notwithstanding section 2308(b) of this title, [warrantors] . . . may not impose any limitation on the duration of any implied warranty on the product." In 15 U.S.C. § 2308(b), the MMWA provides that:

> For purposes of this chapter (other than section 2304(a)(2) of this title), implied warranties may be limited in duration to the duration of a written warranty of reasonable duration, if such limitation is conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty.

---

[147] Rec. Doc. 15–1 at pp. 12–13.

[148] Rec. Doc. 18 at p. 5.

[149] *Id.*

The MMWA, in 15 U.S.C. § 2310, provides a private cause of action for failure to comply with the requirements of the statute.

In the present case, the parties dispute whether YMUSA included its limitation-of-warranty language "on the face of the warranty," as is required under 15 U.S.C. § 2304 and 16 C.F.R. § 701.1. YMUSA maintains that its limitation-of-warranty language appears on the first page, while Plaintiffs contend that the required language appeared on a subsequent page, violating 16 C.F.R. § 701.1. Plaintiffs contend that "the limitation at issue here is the purported limitation of the limited warranties that clearly appear [sic] on page two (2) of the warranty." In addressing this motion, the Court resolves all disputed facts in the Plaintiffs' favor, and accordingly declines to conclude that the warranty-limiting language appeared "on the face of the warranty" as YMUSA alleges.

The parties also dispute whether the alleged three-year warranty limitation was unconscionable under 15 U.S.C. § 2308(b). Three Federal Circuit Courts have concluded that state law governs warranty claims under the MMWA,[150] "except as otherwise prescribed with particularity in Magnuson-Moss itself."[151] Although the United States Court of Appeals for the Fifth Circuit has not addressed whether federal law or Louisiana law governs the determination of whether a warranty limitation is "conscionable," that court has held that "when federal law operates in an area historically regulated by states, courts have required a 'clear statement' by Congress of an intent to

---

[150] *See Carlson v. Gen. Motors* Corp., 883 F.2d 287 (4th Cir. 1989) (applying state law regarding unconscionability); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013–16 (D.C. Cir. 1986) ("We hold . . . that, except in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law."); *Abraham v. Volkswagen of Am., Inc.* 795 F.2d 238, 247–49 (2d Cir. 1986) ("[W]e believe that state law, including privity requirements, governs implied warranties except where explicitly modified .").

[151] *Walsk*, 807 F.2d at 1014.

preempt."[152] "Cognizant of this presumption favoring the validity of state law," the Fifth Circuit has "eschewed interpretations of Magnuson-Moss 'that would significantly affect the federal-state balance.'"[153] Louisiana has not adopted UCC § 2–302, which sets forth the law of unconscionability in many jurisdictions, including almost every jurisdiction from which the parties' cited cases hail.[154] No Louisiana court, and no Federal Court sitting in Louisiana, appears to have addressed the extent to which the MMWA affects Louisiana law pertaining to the conscionability of contracts or to warranty limitations, and the Court, finding no clear statement that the MMWA preempts Louisiana law on this point, now turns to Louisiana law to identify the relevant rule of decision.

The United States Court of Appeals for the Fifth Circuit has noted that "no section of the Louisiana Civil Code directly addresses, in so many words, the doctrine of unconscionability."[155] However LA. CIV. CODE art. 2548 provides that:

> The parties may agree to an exclusion or limitation of the warranty against redhibitory defects. The terms of the exclusion or limitation must be clear and unambiguous and must be brought to the attention of the buyer.

---

[152]  *Chrysler Corp. v. Tex. Motor Vehicle Com'n*, 75 F.2d 1192, 1205 (5th Cir. 1985).

[153]  *Id.*

[154]  *See, e.g. Carlson*, 883 F.2d at 291–92 ("Each of the named plaintiffs in this case is a resident of South Carolina, and nearly all of them purchased their GM cars in that state. Like 48 of her sister states, South Carolina has adopted Article 2 of the Uniform Commercial Code (UCC or the Code) . . . . By its terms, UCC § 2–302 treats "unconscionability" as question of law; and it is therefore "the court—not the jury—[that] should make the determination of whether designated warranty periods are 'reasonable' or 'unconscionable.'"); *Broe v. Oneonta Sales Co., Inc.*, 100 Misc.2d 1099, 1101 (N.Y. S. Ct. 1978) ("Whether the designated periods are 'reasonable' or 'unconscionable' within the meaning of § 2-718 and § 2-719 of the Uniform Commercial Code, as plaintiff claims, 'is a matter for the court to decide'"); *McCabe v. Daimler AG*, 948 F.Supp.2d 1347, 1357 (N.D. Ga. 2013) ("The Uniform Commercial Code ('UCC') contains the following provision regarding unconscionable contacts and clauses . . . All of the relevant jurisdictions in this case have adopted a substantially similar provision."); *Wilson Trading Corp. v. David Ferguson, Ltd.*, 244 N.E.2d 685 (N.Y. Ct. App. 1968).

[155]  *Iberia Credit Bureau, Inc. v. Cingular Wireless, LLC*, 379 F.3d 159, 167 (5th Cir. 2004).

38

A buyer is not bound by an otherwise effective exclusion or limitation of the warranty when the seller has declared that the thing has a quality that he knew it did not have.

The buyer is subrogated to the rights in warranty of the seller against other persons, even when the warranty is excluded.[156]

Addressing express warranties, LA. CIV. CODE art. 2520 comment (b) provides that "the presence of an express warranty in the sale does not convert the action for redhibition into an action for breach of contract," a statement one treatise has interpreted to mean that "the seller's providing a detailed, express warranty is not sufficient to constitute a waiver of the warranty against redhibitory defects."[157] Applying these rules by analogy to the present case, Plaintiffs allege that Yamaha described their F-Series motors as "'high-power' engines that exhibit exceptional product life and 'unmatched reliability and durability.'"[158] They have thus alleged facts that Yamaha has, in essence,"declared that the [motor] has a quality that [it] knew it did not have." These facts, if true, would render Yamaha's warranty limitation unenforceable under state law.[159] Since limitations of warranty must be "conscionable" under the MMWA, the Court, applying LA. CIV. CODE arts. 2548 and 2520 by analogy, concludes that Plaintiffs have stated a cause of action under the MMWA.

---

[156] *See Prince v. Paretti Pontiac Co., Inc.* 281 So.2d 112, 117 ("Although the buyer may waive the implied warranty of hidden defects, the waiver must be clear and unambiguous.").

[157] DIAN TOOLEY-KNOBLETT & DAVID GRUNING, 24 LOUISIANA CIVIL LAW TREATISE § 11.34 (2013).

[158] Rec. Doc. 12 at 5.

[159] Plaintiffs also allege that "without a proper limitation of the duration of implied warranties, the implied warranty of merchantability applies for the reasonable expected life of the product or goods," because "[u]nder the UCC, and courts interpreting time limitations under the UCC, the statutory implied warranty of merchantability imposed on manufacturers remains effective for the reasonable expected life of the goods at issue." Rec. Doc. 18 at p. 5 (citing UNIFORM COMMERCIAL CODE § 2–302, *Carlson*, 883 F.2d 287). Louisiana has not adopted UCC § 2–302.

## C.   Class Claims

YMUSA also contends that the Court should dismiss Plaintiffs' class action claims because:

(1) nationwide class actions are disfavored; and (2) the named plaintiffs lack standing to bring claims

that are not cognizable under Louisiana law. Plaintiffs, however, maintain that: (1) federal appellate

courts continue to certify consumer claim class actions, and (2) that the standing of absent class

members is irrelevant at the pleading stage.[160]

### 1.   Standing

In *In re Deepwater Horizon,* the United States Court of Appeals for the Fifth Circuit held

that:

> The elements of Article III standing are constant throughout litigation: injury in fact, the injury's traceability to the defendant's conduct, and the potential for the injury to be redressed by the relief requested. . . .
>
> Since they are not mere pleading requirements, but rather an indispensable part of the plaintiff's case, each element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.[161]

For instance, "[w]here it is facially apparent from the pleadings that there is no ascertainable class,"

the Fifth Circuit has concluded that "a district court may dismiss the class allegation on the

pleadings."[162] Applying these principles to the present case, YMUSA's motion to dismiss Plaintiffs'

---

[160]   Plaintiffs aver that YMUSA's "request to dismiss Plaintiffs' class allegations is more properly characterized as a motion to strike than a motion to dismiss." Rec. Doc. 18 at p. 12.

[161]   *In re Deepwater Horizon–Appeals of the Economic and Property Damage Class Action Settlement,* 739 F.3d 790, 799 (5th Cir. 2014) (quoting *Lewis v. Casey,* 518 U.S. 343, 358 (1996)).

[162]   *John v. Nat'l Sec. Fire and Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007).

class claims is governed by the same standard that governs a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

The gist of YMUSA's standing argument is that Plaintiffs are residents of Louisiana and are precluded under Louisiana law from bringing certain claims on their own behalf,[163] and therefore may not "create standing" by alleging these precluded claims on behalf of others.[164] Plaintiffs contend that the Court should not dismiss[165] or strike[166] their class allegations "prior to class

---

[163] These include negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, and unjust enrichment, which the Court concludes are barred by the LPLA.

[164] Rec. Doc. 15–1 at p. 20. In support of this proposition, YMUSA cites several cases from outside the Fifth Circuit. *See In re Packaged Ice Antitrust Litig.*, 779 F.Supp.2d 642, 659 (E.D. Mich. 2011) (dismissing claims of nonresident putative class representatives because "n the absence of . . . an allegation [of injury] as to each and every state whose laws they seek to invoke, the IP Plaintiffs lack standing in states other than their "home states."); *In re G-Fees Antitrust Litig.*, 584 F.Supp.2d 26 (D.D.C. 2008) ("Because the allegations do not support an inference that any of the named plaintiffs have been personally injured such as to provide them with the causes of action asserted in Counts III and IV under the laws of [a number of states]. . . plaintiffs lack standing to bring those claims, and the claims asserted in Counts III and IV as to those jurisdictions will be dismissed"); *Parks v. Dick's Sporting Goods*, No. 05-6590, 2006 WL 1704477 (W.D.N.Y. Jun. 15, 2006) ("[S]ince . . . when considering standing, the Court must look at the named plaintiff or plaintiffs, not the unnamed class members, and since here, there is just one named plaintiff, who lacks either statutory or Article III standing to sue for violations of state laws other than those of New York, the Court fails to see what impact a motion for class certification would have on the pending motion."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F.Supp.2d 1109, 1124–25 (N.D. Cal. 2008) (granting defendants' motion to dismiss claims brought on behalf of individuals who did not live in the same state as any class representative, and granting plaintiffs leave to amend their complaint add class representatives from those states).

[165] In support of this proposition, Plaintiffs cite a series of district court opinions from outside the Fifth Circuit, including *Ramirez v. Dollar Phone Corp.*, No. 09-2290, 2009 WL 3171738 at *9 (E.D.N.Y. Oct. 1, 2009) (citations omitted) ("[T]he fact that the named Plaintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they purchased Defendants' calling cards is immaterial on a motion to dismiss a class action"); *In Re Bayer Corp. Combination Aspirin Litig.*, 701 F.Supp.2d 356, 376 (E.D.N.Y. 2010) ("Plaintiffs have drawn the connection between the statutes [of states other than those in which they reside] and defendant's offending conduct. This is sufficient for defendant and the Court to draw inferences that the elements exist."); *In re Grand Theft Auto Video Game Consumer Litig.*, No. 06-1739, 2006 WL 30339993 at *3 (S.D.N.Y. Oct. 25, 2006) ("The relevant question . . . is not whether the Named Plaintiffs have standing to sue Defendants–they most certainly do–but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action . . . This question is, at least in the first instance, appropriately answered through the class certification process."); *Whitson v. Bumbo*, No. 07-05597, 2008 WL 2080855 (N.D. Cal. May 14, 2008) ("While state to state variations in the law raise questions as to whether a nation-wide class action is manageable for purposes of class certification, the variations do not imply that plaintiff has failed to state a claim under those laws.").

[166] Rec. Doc. 18 at pp. 12–13. In support of this argument, Plaintiffs cite *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("Striking a party's pleadings is an extreme measure, and, as a result, we have

41

certification," because such a remedy is "not appropriately addressed prior to class certification," when Plaintiffs will "establish[]" the standing of putative class members.[167]

Applying *In re Deepwater Horizon*, the Court now considers whether Plaintiffs have adequately alleged that they have standing to bring their class claims. To demonstrate standing, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by unidentified members of the class to which they belong and which they purport to represent."[168] Plaintiffs have alleged a viable redhibition action under Louisiana law and have stated a claim under the MMWA, at least insofar as the MMWA incorporates Louisiana law. Plaintiffs therefore have sufficiently alleged standing to overcome the present motion to dismiss their class claims related to these causes of action. To the extent, however, that Plaintiffs seek to proceed on behalf of a nationwide class under theories of negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, and unjust enrichment, Plaintiffs have failed to allege any cognizable injury under Louisiana law, and therefore may not proceed on behalf of absent class members who may have been so injured under other states' dissimilar laws. The Court therefore dismisses Plaintiffs' class claims arising under these theories.

---

previously held that "[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted."); *Rios v. State Farm and Cas. Co.*, 469 F.Supp.2d 727, 741 (S.D. Iowa 2007) (concluding that "here, Plaintiffs have alleged sufficient facts to make a showing of Rule 23's applicability, and have further demonstrated that class discovery will produce information necessary to determine the appropriateness of a class action," and denying the defendant's motion to strike and dismiss the plaintiff's nationwide class allegations); *Daigle v. Ford Motor Co.*, 713 F.Supp.2d 822, 832 (D. Minn. 2010) (denying motion to strike class allegations at the pleading stage); *Misra v. Decision One Mortg. Co., LLC*, 673 F.Supp.2d 987, 993–995 (C.D. Cal. 2008) (same).

[167] Rec. Doc. 18 at p. 11.

[168] *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

### 2. Nationwide Class Actions

YMUSA and Plaintiffs dispute whether the putative nationwide scope of Plaintiffs' class action requires the Court to dismiss Plaintiffs' class claims at the pleading stage. Regarding this point, YMUSA cites *In re Vioxx Products Liability Litigation*, a district court decision from the Eastern District of Louisiana in which the court concluded that " the application of the laws of fifty-one jurisdictions to the claims of the proposed class creates problems for the typicality, adequacy, predominance, and superiority requirements of Rule 23."[169] This case, along with other cases cited by YMUSA on this point, addresses class certification, not dismissal on the pleadings.[170] Plaintiffs cite *In re Deepwater Horizon,* but do not cite any authority from the Fifth Circuit or from courts within the Fifth Circuit specifically addressing whether the Court may dismiss nationwide class actions based on the pleadings.[171] The Fifth Circuit, in *Castano v. American Tobacco Co.*, concluded that "variations in state law may swamp any common issues" present in a putative class action and may thereby defeat the predominance requirement set forth in Federal Rule of Civil Procedure 23.[172] In the present case, however, the parties have not briefed the Court on the issue of class certification, and the Court will not speculate about the relationship between Plaintiffs' surviving claims and the applicability of Federal Rule of Civil Procedure 23 absent further discovery and briefing on the issue.

---

[169] 239 F.R.D. 450 (E.D. La. 2006).

[170] *See Cole v. Gen. Motors Corp.*, 484 F.3d 717-30 (5th Cir. 2007); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 585 (9th Cir. 2012); *Kowalsky v. Hewlett-Packard Co.*, No. 10-2176, 2012 WL 892427 (N.D. Cal. Mar. 14, 2012). *But see Rikos v. Procter & Gamble Co.*, No. 11-226, 2012 WL 641956 (N.D. Ohio, Feb. 28, 2012) (dismissing class claims on the pleadings).

[171] *In re Deepwater*

[172] 84 F.3d 734, 741 (5th Cir. 1996).

## IV. Conclusion

Plaintiffs have stated viable causes of action in redhibition and under the MMWA. Accordingly, the Court denies YMUSA's motion as to these claims. Under Louisiana law, Plaintiffs may not state claims in negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, breach of contract, or unjust enrichment based on the conduct alleged. They may not therefore serve as class representatives with respect to any of those claims. Accordingly, the Court grants YMUSA's motion as to these claims. Finally, because the Court has, in the present order, addressed the issues raised in YMUSA's "Motion to Dismiss Plaintiffs' Complaint,"[173] the Court will deny that motion as moot.

Accordingly,

**IT IS ORDERED** that Defendant Yamaha Motor Corp., USA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint"[174] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that Defendant Yamaha Motor Corp., USA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint" is **DENIED** as to Plaintiffs' claims in redhibition and under the Magnuson-Moss Warranty Act.

**IT IS FURTHER ORDERED** that Defendant Yamaha Motor Corp., USA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint" is **GRANTED** as to Plaintiffs' negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, breach of contract, or unjust enrichment claims.

---

[173] Rec. Doc. 9.

[174] Rec. Doc. 15.

**IT IS FURTHER ORDERED** that Defendant Yamaha Motor Corp., USA's "Motion to Dismiss Plaintiffs' First Amending Class Action Complaint" is **DENIED** as to Plaintiffs' class allegations in redhibition and under the Magnuson-Moss Warranty Act, and **GRANTED** as to Plaintiffs' class allegations under theories of negligence, unfair trade practices, fraudulent concealment, breach of implied warranties, breach of contract, or unjust enrichment.

**IT IS FURTHER ORDERED** that Defendant Yamaha Motor Corp., USA's "Motion to Dismiss Plaintiffs' Complaint"[175] is **DENIED AS MOOT.**

      **NEW ORLEANS, LOUISIANA**, this  30th      day of September, 2014.

<br>

_____
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[175] Rec. Doc. 9.